DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court and the following disposition is made:
 {¶ 1} Appellant, Diane Zorn ("Wife") appeals from the decision of the Medina County Domestic Relations Court. This Court dismisses the appeal.
 I. {¶ 2} David Zorn ("Husband") and Wife were married on June 22, 1996. On February 9, 2004, Husband filed for divorce. The trial began on January 7, 2005. At trial, the parties stipulated to the following: 1) Wife had a separate property interest in the marital home in the amount of $50,615.42, 2) Husband had a separate property interest in the marital home in the amount of $11,660.18, 3) the balances owed on the first and second mortgages of the marital home, 4) *Page 2 
Wife's Lincoln Financial SEP Plan was worth $3,923.18 on the date of the marriage and $15,436.22 at the time of the trial, yielding a marital portion of $11,513.04, 5) Husband's SEP plan was worth $32,226.38 at the time of the marriage and $106,890.44 at the time of trial, yielding a marital portion of $74,664.06.
 {¶ 3} On May 13, 2005, the trial court issued a final judgment entry which was amended on June 3, 2005 ("2005 Order"). The 2005 Order reserved jurisdiction over the issue of the parties' retirement accounts. A hearing was held on May 5, 2006 to address the retirement accounts and the distribution of proceeds from the marital home, which had been sold since the trial. At this hearing, Husband presented an expert report valuing the marital portion of his SEP plan to be $28,557, as opposed to the $74,664.06 agreed upon at trial. On December 12, 2006, the trial court issued another amended findings and judgment entry ("2006 Order"), dividing the parties' retirement accounts based upon the evidence received at the May 5, 2006 hearing, and ordering the distribution of the proceeds from the marital home.
 {¶ 4} On July 20, 2007, the Qualified Domestic Relations Orders ("QDRO") were filed dividing the parties' retirement plans. On August 17, 2007, Wife appealed from the QDROs, the amended final judgment entry (Divorce) of June 3, 2005, and the amended findings and judgment entry of December 12, 2006. She has asserted four assignments of error for our review. *Page 3 
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN ITS DIVISION OF PROPERTY BY IMPROPERLY DETERMINING THAT (1) THE $10,050.45 PREMARITAL BALANCE IN WIFE'S FIFTH THIRD BANK ACCOUNT, WHICH WAS USED TOWARDS THE PURCHASE OF THE MARITAL HOME, WAS NOT HER SEPARATE PROPERTY; (2) THE $5,445.88 BALANCE IN THE METROPOLITAN BANK ACCOUNT, WHICH WAS A GIFT TO WIFE FROM HER MOTHER, WAS NOT HER SEPARATE PROPERTY; AND (3) THAT THE CD-CHANGER INSTALLED IN WIFE'S CAR AS A GIFT FROM HUSBAND WAS NOT HER SEPARATE PROPERTY."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN ITS DIVISION OF PROPERTY BY INCORRECTLY DETERMINING THAT THE LAWSUIT SETTLEMENT PROCEEDS OF $25,923.57 PAID DURING THE PARTIES' MARRIAGE, WHICH INVOLVED THE DEFECTIVE CONSTRUCTION OF THE HIGH POINT CONDOMINIUM UNIT, WERE HUSBAND'S SEPARATE PROPERTY, RATHER THAN MARITAL PROPERTY TO BE DIVIDED EQUALLY BETWEEN THE PARTIES."
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED IN ITS ALLOCATION OF DEBT BY INCORRECTLY DETERMINING THAT THE PREMARITAL SECOND MORTGAGE OR EQUITY LOAN DEBT OF $9,105.58 ON HUSBAND'S PRE-MARITAL CONDOMINIUM RESIDENCE, THE $6,000.00 LOAN TO HUSBAND FROM HIS BROTHER IN CALIFORNIA, AND HUSBAND'S CREDIT CARD DEBT WAS MARITAL DEBT, RATHER THAN SEPARATE DEBT OF HUSBAND TO BE REPAID BY HIM PERSONALLY."
 ASSIGNMENT OF ERROR IV *Page 4 "THE TRIAL COURT ERRED IN THE DIVISION OF THE PENSION PLANS BY DENYING WIFE'S MOTION IN LIMINE AND BY ACCEPTING HUSBAND'S UNTIMELY SUBMITTED EXPERT REPORT, WHICH VALUED THE MARITAL PORTION OF HIS McDONALD SEP PENSION PLAN AT ONLY $28,557.00, WHERE THE PARTIES STIPULATED AT TRIAL THAT THE VALUE OF THE MARITAL PORTION OF 
HUSBAND'S SEP PENSION PLAN WAS $74,664.06."
 {¶ 5} Wife raises four assignments of error with regard to the trial court's decisions arising from the 2005 and 2006 Orders. "However, we do not reach the merits of [her] arguments] because we find that that [she] did not timely appeal the 2006 Order." Miller v. Miller, 9th Dist. No. 07CA0068-M, 2007-Ohio-2106, at ¶ 7.
 {¶ 6} Prior to the Ohio Supreme Court's decision in Wilson v.Wilson, 116 Ohio St.3d 268, 2007-Ohio-6056, it was this Court's position that a divorce decree was not a final, appealable order until the trial court also adopted the parties' QDRO(s). See Wilson v. Wilson, 9th Dist. No. 05CA0078, 2006-Ohio-4151 (rejecting a challenge to a decree for lack of a final, appealable order). However, the Ohio Supreme Court rejected this Court's position and held that, "[a] divorce decree that provides for the issuance of a [QDRO] is a final, appealable order, even before the QDRO is issued." Wilson, at syllabus. The Court clarified that a QDRO "merely implements the divorce decree[,]" it "does not in any way constitute a further adjudication on the merits[.]" Id. at ¶ 15-16. The Supreme Court based its decision on Civ.R. 75(F). Id. at ¶ 8-16 (noting that Civ.R. 75 *Page 5 
provides for the finality of judgment in divorce cases and does not base its finality determination upon the issuance of a QDRO). Civ.R. 75 governs divorce, annulment, and legal separation actions.Wilson interpreted Civ.R. 75(F) and clarified that a party may appeal from a final order in a divorce case even before the QDRO issues. See Id. at ¶ 15-16 (specifying that the decree itself divides the parties' property, not the QDRO, which merely implements the decree's terms).
 {¶ 7} The Supreme Court in Wilson issued its decision on November 20, 2007, three months after Wife filed her notice of appeal. We have recently determined that the Ohio Supreme Court's decision inWilson is to be applied retroactively. Miller, supra, at ¶ 14. Accordingly, we must apply the Wilson decision to the arguments before us. Id.
 {¶ 8} Wife states that she is appealing from the QDROs, "Amended Findings and Judgment Entry of December 12, 2006, and the Amended Final Judgment Entry (Divorce) of June 3, 2006." However, we find that her argument on appeal is based on the orders of June 3, 2005 and December 12, 2006.
 {¶ 9} Wife assigns error to the trial court's determinations regarding 1) Wife's Fifth Third Bank account, 2) Wife's Metropolitan Bank account, 3) the CD changer installed in Wife's car, 4) Husband's law suit settlement, 5) the second mortgage on Husband's condominium, 6) a loan from Husband's brother, and 7) Husband's credit card debt. These issues were disposed of in the 2005 Order. In fact, many of Wife's arguments in this appeal mimic arguments the trial court *Page 6 
specifically addressed in the 2005 Order. We note that Wife did appeal from the 2005 Order, however, due to the fact that the trial court deferred the allocation of pension and retirement assets until a later date, we found that it was not a final appealable order.
 {¶ 10} Further, Wife assigns error to the trial court's denial of her motion in limine made prior the May 5, 2006 hearing, and the trial court's acceptance of Husband's expert report regarding the marital portion of his SEP Plan. But she does not argue that the QDRO does not accurately reflect the trial court's 2006 Order. Rather, she argues that the trial court erred in its 2006 Order dividing the parties' SEP plans.
 {¶ 11} Under Wilson, the 2006 Order was a final, appealable order.Miller, supra, at ¶ 15. Accordingly, Wife should have timely pursued her appeal from the
2006 Order.[1] App.R. 4 provides that "[a] party shall file the notice of appeal * * * within thirty days of the later of entry of the judgment or order appealed[.]" "Where a notice of appeal is not filed within the time prescribed by law, the reviewing court is without jurisdiction to consider the issues that should have been *Page 7 
raised in the appeal." State ex rel. Pendell v. Adams Cty. Bd. ofElections (1988), 40 Ohio St.3d 58, 60.
 {¶ 12} Wife filed her appeal on August 17, 2007. This is well outside the 30 day timeframe set forth in App.R. 4. As such, we have no jurisdiction to consider the merits of her appeal. See Pendell,40 Ohio St.3d at 60. "We would, however, have jurisdiction to review the content of [the] QDROs had [Wife] made the claim on appeal that [the] QDROs did not accurately implement the [2006 Order]. However, [Wife] made no such claim on appeal." Miller, supra, at ¶ 15. Accordingly, we do not have jurisdiction to address Wife's assignments of error.
 III. {¶ 13} Because this Court lacks jurisdiction, Wife's appeal is dismissed.
Appeal dismissed.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 8 
Costs taxed to Appellant.
WHITMORE, J. CONCURS
SLABY, J. CONCURS IN JUDGMENT ONLY
[1] We note that Wife did file an appeal from the 2006 Order. We dismissed it for lack of a final, appealable order. However, unlike the Appellant in Wilson, Wife did not test the precedent in the Ninth District on this issue. Miller, supra, at fn 2. She had the option of seeking further review in the Ohio Supreme Court. See Wilson, supra (reversing this Court's determination that a divorce decree was not a final, appealable order). Wife did not pursue this option.Miller, supra, at fn. 2. *Page 1