[Cite as *King v. King*, 2013-Ohio-432.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| PHILIP G. KING, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2011-G-3046 |
| JENNIFER L. KING, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 07 DC 000470.

Judgment: Affirmed.

*R. Russell Kubyn*, The Kubyn Law Firm, 8373 Mentor Avenue, Mentor, OH 44060 (For Plaintiff-Appellee).

*Joyce E. Barrett*, 800 Standard Building, 1370 Ontario Street, Cleveland, OH 44113-1752 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Jennifer L. King, appeals from a judgment of the Geauga County Court of Common Pleas, imposing a 30-day jail sentence for her failure to purge her contempt, and suspending appellee, Philip G. King's, spousal support obligation for a period of 16 months. The trial court ordered that Philip's spousal support obligation towards Jennifer be used to offset Jennifer's obligation to pay Philip's attorney fees

pursuant to a previous court order in which judgment was issued against Jennifer for those fees.

{¶2} Philip and Jennifer married in 1994. Two children were born as issue of the marriage. In 2007, Philip filed for divorce. Jennifer filed an answer and counterclaim. The parties were granted a divorce in 2009. The divorce decree adopted a separation agreement and shared parenting plan executed by the parties. The divorce decree ordered Philip to pay spousal support to Jennifer in the amount of $334 per month, plus a two percent processing charge, for 84 consecutive months commencing on February 5, 2009. The decree stated that all payments shall terminate on January 31, 2016 or sooner upon the death of either party. Further, the court stated that it "will not retain jurisdiction except to terminate [spousal support] * * *."

{¶3} Jennifer failed to comply with various orders set forth in the divorce decree and separation agreement. As a result, Philip filed numerous motions and supplements to show cause and compel Jennifer's compliance. Following a hearing, the magistrate recommended that Jennifer be found in contempt of court and sentenced to 30 days in jail with purge conditions. The magistrate also recommended awarding Philip attorney fees. Jennifer filed objections to the magistrate's decision. The court overruled her objections and adopted the magistrate's decision, with minor changes, on January 13, 2011. The court sentenced Jennifer to 30 days in jail, fined her $250, and awarded Philip a judgment against Jennifer in the amount of $5,000 for his attorney fees. The sentence was stayed on the condition that Jennifer purge herself of contempt by dates specified in the order.

**{¶4}** Jennifer continued to fail to abide by court orders, including the finding of contempt order. Thus, Philip filed numerous motions to impose a jail sentence. Following a hearing on November 1, 2011, the court concluded that Jennifer failed to purge herself of contempt and did not present sufficient justification for failing to do so. In a judgment entry dated November 2, 2011, the trial court sentenced Jennifer to 30 days in jail and suspended Philip's spousal support obligation for 16 months commencing December 1, 2011. The court ordered that the sum of $334 shall be applied each month towards Jennifer's obligation to pay Philip's attorney fees as previously ordered by the court. Jennifer filed an appeal and raises the following assignments of error:

**{¶5}** "[1.] The trial court erred and abused its discretion in finding appellant in contempt of court and imposing a thirty day jail sentence.

**{¶6}** "[2.] The trial court erred and abused its discretion in modifying the non-modifiable spousal support award contained in the judgment entry of divorce.

**{¶7}** "[3.] The trial court erred and abused its discretion in attaching appellant's spousal support for the payment of a judgment/debt."

**{¶8}** In her first assignment of error, Jennifer argues the trial court abused its discretion in finding her in contempt of court and imposing a 30-day jail sentence. Jennifer maintains it was impossible for her to fully perform and that she substantially complied with the purge order to the best of her financial ability.

**{¶9}** A reviewing court must uphold the trial court's decision in a contempt proceeding absent a showing that the court abused its discretion. *Nolan v. Nolan*, 11th Dist. No. 2007-G-2757, 2008-Ohio-1505, ¶28, citing *Winebrenner v. Winebrenner*, 11th

3

Dist. No. 96-L-033, 1996 Ohio App. LEXIS 5511, *7 (Dec. 6, 1996), citing *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 75 (1991). The term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *State v. Underwood*, 11th Dist. No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).

{¶10} The Second Appellate District also adopted a similar definition of the abuse-of-discretion standard: an abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. When an appellate court is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Id.* at ¶67.

{¶11} In *Nolan, supra*, this court further stated:

{¶12} "'The party asserting a show cause motion has the burden to prove that a breach has occurred by clear and convincing evidence.' *Winebrenner* at *8. 'Clear and convincing evidence' has been defined as 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 331 (1999).'

4

{¶13} "'A prima facie showing of civil contempt exists when the moving party * * * produces evidence of nonpayment * * *. Then, the burden shifts to the alleged contemnor to establish any defense he may have for nonpayment.' *Winebrenner, supra*, at *8. * * *

{¶14} "'Impossibility of performance is a valid affirmative defense to a contempt charge.' *Bertolone v. Bertolone*, 11th Dist. No. 2001-L-001, 2001-Ohio-8733, citing *Bean v. Bean* (1983), 14 Ohio App.3d 358, 363 * * *. 'The party raising the affirmative defense has the burden to prove that defense.' *Bertolone,* at P3. * * *

{¶15} "Also, '* * * a person charged with contempt for the violation of a court order may defend by proving that it was not in his power to obey the order.' *Courtney v. Courtney* (1984), 16 Ohio App.3d 329, 334 * * *." *Nolan* at ¶29-32.

{¶16} Accordingly, Philip, as the moving party, had the burden of establishing a breach of Jennifer's obligations by clear and convincing evidence. In turn, the burden shifted to Jennifer, as the contemnor, to establish any defense she may have had for nonpayment. For the reasons that follow, upon review, we find the sentence imposed by the trial court is within its authority and is not disproportionate to Jennifer's conduct. R.C. 2705.05(A)(1).

{¶17} In an order dated January 13, 2011, the court found Jennifer guilty of contempt because of her failure to: (1) pay Philip $192, the amount seized by Fifth Third Bank, (2) deliver the red shovel and a 36-inch Sony or Toshiba flat-screen television to Philip's attorney's office, (3) pay the $340 balance for the children's counseling to Dr. Hill-Newby, (4) bring and keep the Fifth Third home equity loan current, and (5) list the Downing Drive property for sale.

5

{¶18} As stated previously, in its January 13, 2011 order, the court sentenced Jennifer to 30 days in jail, fined her $250, and awarded Philip a judgment against Jennifer in the amount of $5,000 for his attorney fees. The sentence was stayed on the condition that Jennifer purge herself of contempt by (1) paying $192.06 to Philip within 30 days, (2) delivering to Philip's attorney's office within 10 days the red shovel and a 36-inch flat-screen Sony or Toshiba television, (3) paying within 30 days $340 to the children's counselor and paying in full all delinquent and past due charges on the Fifth Third Bank home equity line of credit account, (4) signing a listing agreement within 10 days with real estate agent Greg Pernus at a price recommended by him, (5) and paying $5,000 in attorney fees to Philip in monthly installments of $500 or more beginning 30 days after entry of the court's January 13, 2011 judgment.

{¶19} Jennifer alleges that she did "all that she was able to do," and that she substantially complied with the purge order. However, her testimony during the November 1, 2011 hearing contradicts her allegations. During the hearing, Jennifer was questioned about each of the items at issue and her compliance with the court's deadlines and specific directions regarding the same.

{¶20} With respect to each of the items enumerated above, Jennifer admits that she did not timely comply with the court's ordered deadlines. A television was delivered to Philip's attorney in September, 2011, nearly nine months after the date specified in the court's order. The television appeared to have been damaged, contrary to the court's order that it be in "good condition." Jennifer testified that she mailed the shovel on June 30, 2011, six months after the court's deadline, and admitted she had purchased it rather than it being the shovel identified in the divorce decree. Philip

6

testified that he had attempted to remove the shovel from the home on the date and time instructed by the court, but was prevented from doing so by Jennifer.

{¶21} With respect to the house, Jennifer was instructed to list it with a Howard Hanna agent by the name of Greg Pernus at a price he recommended within 10 days of the court's January 13, 2011 order. However, Jennifer claimed during the hearing to have signed a listing contract with Howard Hanna on October 23, 2011, with Ms. Mary Sue Murray. Thus, not only did Jennifer not timely comply with the listing deadline, she did not list the home for sale with the proper court-ordered agent nor at the price he specified.

{¶22} Jennifer admits that she did not make the $192.06 payment to Philip, nor did she pay any sum toward the $5,000 in attorney fees. Regarding the $340 balance owed to the children's counselor, Jennifer admitted that she did not timely make a lump sum payment within 30 days of the court's order, but instead, offered to pay the balance owed in $5 installments. The offer was rejected by Dr. Hill-Newby.

{¶23} With respect to the Fifth Third Bank home equity loan, Jennifer testified that she received notification from Fifth Third that the loan had been charged off as delinquent as of August 4, 2011. Thus, Jennifer did not comply with the court's order to keep the loan current.

{¶24} Based on the foregoing record evidence, Jennifer failed to comply with the terms, conditions, and specified dates in the purge order. Jennifer was required, but failed, to make good faith efforts to comply with court orders. *See, Campbell v. Pryor*, 5th Dist. No. 2010CA00231, 2011-Ohio-1222, ¶26. While Jennifer testified that her expenses exceeded her income, thus allegedly making it impossible for her to comply

7

with the purge order, she admitted that had she sold the house, she would have had the income necessary to meet the other financial obligations outlined in the purge order. However, as noted, she was 10 months late in listing the house. Therefore, any "impossibility" with compliance was created by Jennifer's own actions.

{¶25} The evidence also showed that Jennifer used a portion of her income for entertainment and her and the children's athletic activities, which were not priority expenditures in view of the court's deadlines regarding her obligations to Philip. In sum, Jennifer failed to purge herself of contempt and failed to present sufficient justification for not doing so.

{¶26} Unsupported claims of financial difficulties are insufficient to satisfy a contemnor's burden. *See Pettit v. Pettit*, 8th Dist. No. 64582, 1993 Ohio App. LEXIS 6200, *12 (Apr. 23, 1993); *See also*, *Rinehart v. Rinehart*, 87 Ohio App.3d 325 (3d Dist.1993). Because Jennifer failed to present a valid defense, the court properly found that she failed to meet her burden. Moreover, some of her other failures were not a function of financial inability. The court did not abuse its discretion in finding Jennifer in contempt of court and imposing a 30-day jail sentence.

{¶27} Jennifer's first assignment of error is without merit.

{¶28} In her second assignment of error, Jennifer contends that the trial court abused its discretion in modifying the "non-modifiable" spousal support award contained in the divorce decree, in violation of R.C. 3105.18(E). Jennifer alleges the court lacked jurisdiction in modifying Philip's monthly spousal support obligation for a period of 16 months.

8

{¶29} R.C. 3105.18(E) states in part: "* * * if a continuing order for periodic payments of money as spousal support is entered in a divorce * * * action that is determined on or after January 1, 1991, the court that enters the decree of divorce * * * does not have jurisdiction to modify the amount or terms of the * * * spousal support unless the court determines that the circumstances of either party have changed and unless * * *:

{¶30} "(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of * * * spousal support."

{¶31} As stated, the divorce decree ordered Philip to pay spousal support to Jennifer in the amount of $334 per month, plus a two percent processing charge, for 84 consecutive months commencing on February 5, 2009. The decree stated that all payments shall terminate on January 31, 2016, or sooner upon the death of either party. The court retained jurisdiction to terminate the spousal support award. Also, as previously noted, the separation agreement incorporated into the divorce decree stated that the court shall not retain jurisdiction to modify the spousal support award except to terminate.

{¶32} Contrary to Jennifer's assertions, the court did not modify the spousal support award. Rather, in its November 2, 2011 judgment, the court suspended Philip's spousal support obligation for 16 months, instead ordering the sum of $334 to be offset each month against Jennifer's obligation to pay Philip's attorney fees as previously ordered by the court. Thus, the trial court did not order a modification of the support obligation, but instead, ordered a setoff of the parties' joint obligations to one another.

9

**{¶33}** "The Ohio Supreme Court defined the right to setoff as 'that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual decision.'" *Gibbons v. Southern Ohio Kitchens*, 12th Dist. No. CA2003-07-072, 2004-Ohio-2907, ¶16, quoting *Witham v. South Side Building & Loan Assn.*, 133 Ohio St. 560, 562 (1938).

**{¶34}** "A trial court's authority to set off one judgment against another involving the same parties is a well established equitable principle * * *." *Jones v. Jones*, 4th Dist. No. 07CA25, 2008-Ohio-2476, ¶2. "A set-off, whether legal or equitable, must relate to cross-demands on the same right, and when there is mutuality of obligations." *Witham* at 562. "A court may order an ex-spouse's current support obligations to be set off against the other ex-spouse's arrearages." *Krause v. Krause*, 35 Ohio App.3d 18, paragraph one of the syllabus (12th Dist.1987). *See also Dilley v. Dilley*, 11th Dist. No. 2010-G-2957, 2011-Ohio-2093*, ¶12; Gallo v. Gallo*, 11th Dist. No. 90-L-14-013, 1990 Ohio App. LEXIS 5697*, *1-2 (offsetting support payments against arrearages between spouses). "A trial court's decision to set off the parties' judgments is within the sound discretion of the court and will not be disturbed on appeal absent an abuse of discretion." *Krause* at paragraph two of the syllabus.

**{¶35}** Jennifer exhibited a history of failing to comply with court orders. The court credited future spousal support payments of Jennifer to effect the payment of monies owed by Philip in order to set off their respective debts to one another. See *Witham* at 562. The court did not abuse its discretion in ordering the offsetting of Philip's monthly spousal support obligation for a period of 16 months.

**{¶36}** Jennifer's second assignment of error is without merit.

**{¶37}** In her third assignment of error, Jennifer argues the trial court abused its discretion in "attaching" her monthly spousal support and applying the payment to her obligation to pay Philip's attorney fees, in violation of R.C. 2329.66(A)(11).

**{¶38}** Jennifer characterizes the previously discussed offset as an attachment under R.C. 2329.66(A)(11). However, the legal concept of "attachment" is inapplicable to the facts presented.

**{¶39}** "Attachment has been defined as 'a provisional auxiliary remedy, created by statute, whereby a creditor can obtain a contingent lien on property of the debtor, and thus have this property kept available to satisfy any judgment which he may recover against the debtor ( * * *).' Oleck, Debtor-Creditor Law, 30, Section 8. This court has described attachment as 'an execution *before* judgment (* * *).'" (Emphasis added) *Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 182, fn. (1975).

**{¶40}** In the present case, the court did not "attach" Jennifer's earnings or support to pay an unrelated debt. Neither Philip's support obligation nor Jennifer's attorney fee obligation were used as security for a potential judgment. Rather, judgment had already been ordered against Jennifer, and the trial court was merely exercising its previously described right to satisfy a judgment already rendered using the remedy of setoff of mutual obligations. As set forth in our analysis under Jennifer's second assignment of error, the trial court properly credited future spousal support payments of Jennifer to effect the payment of monies owed by Philip.

**{¶41}** Jennifer's third assignment of error is without merit.

{¶42} For the foregoing reasons, appellant's assignments of error are not well-taken. It is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

MARY JANE TRAPP, J.,

concur.